# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

KE'MOGENA YISRAEL,
on behalf of minor child, T.D.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:18-cv-410

Barrett, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Plaintiff Ke' Mogena Yisrael filed this Social Security appeal in order to challenge the Defendant's finding that her minor child (hereinafter "TD") is no longer disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff argues that the ALJ erred in finding medical improvement that resulted in the discontinuation of her son's SSI benefits. The Commissioner filed a response, to which Plaintiff filed no reply. As explained below, the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Background**

In 2012, Plaintiff's son TD was determined to be disabled, beginning at the age of 2 years and 9 months old, based upon "extreme" limitations in interacting and relating with others, and stemming from TD's "severe speech delay and severe phonological disorder." (Tr. 65-68). When a child is determined to be disabled, the Commissioner is required to periodically review whether the child continues to be eligible for benefits. 42 U.S.C. § 1382c(a)(H)(ii)(I). Two days shy of TD's seventh birthday, on May 29, 2014, the Social Security Agency conducted that review. The agency determined that TD's

condition had improved, such that he was no longer disabled as of May 1, 2014. The non-disability determination was upheld upon reconsideration after a hearing before a State agency Disability Hearing Officer. Thereafter, Plaintiff requested a hearing *de novo* before an Administrative Law Judge ("ALJ").

A brief evidentiary hearing was begun on September 22, 2016 before ALJ Robert Flynn, but was continued in order to allow Plaintiff to submit additional evidence as well as for her to find counsel. (Tr. 54-64). On May 9, 2017, ALJ Flynn reconvened the hearing. Represented by counsel, Plaintiff and TD both appeared, and Plaintiff offered testimony about her son's limitations. (Tr. 33- 53). On August 11, 2017, ALJ Flynn denied TD's SSI application in a written decision, concluding that his disability had ended as of May 1, 2014 and that he had not again become disabled after that date. (Tr. 11-27). The Appeals Council denied Plaintiff's request for further review, leaving the ALJ's decision as the final decision of the Commissioner.

The previously favorable disability decision, known as the "comparison point decision" ("CPD"), dated April 26, 2012, listed the following medically determinable impairments: "mixed receptive-expressive language disorder; speech apraxia; a reading disorder; a learning disorder/attention deficit and hyperactivity disorder (ADHD); an anxiety disorder; and borderline intellectual functioning." (Tr. 14-15). Together, TD's impairments were determined to functionally equal a Listing based upon a determination that, as of the date of the CPD, TD suffered from "extreme" limitation in the area of interacting and relating with others. (Tr. 15). Since an "extreme" limitation in any single functional domain results in a presumption of disability, the CPD did not evaluate the level of TD's limitation in any other functional domain.

ALJ Flynn determined that as of May 1, 2014, there had been a decrease in the medical severity of TD's impairments. Specifically, the ALJ determined that speech therapy records and diagnostic studies alike demonstrated "the claimant has made significant medical improvement in his speech and language abilities since the CPD." (Tr. 15). Therefore, the ALJ found that TD had improved in the area of "interacting and relating with others" from his original "extreme" limitation, despite continuing to exhibit a "marked" level of limitation. In three additional functional areas, the ALJ found "less than marked limitation," and in two areas, the ALJ found no limitation at all. Because the ALJ determined that TD no longer has any "extreme" limitation, and based on his additional determination that TD continues to exhibit only one area of "marked" limitation, the ALJ concluded that TD was no longer under any disability, as defined in the Social Security Regulations. (Tr. 26-27).

On appeal to this Court, Plaintiff argues that substantial evidence does not exist to uphold the ALJ's findings that TD has only a single area of "marked" limitation, and is no longer disabled. I disagree.

**II. Analysis**

**A. Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). An individual under the age of eighteen will be considered to be under a disability if the child has a medically determinable impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. §1382c(a)(3)(C)(i). The implementing regulations define the standard of "marked and severe functional

3

limitations" in terms of "listing-level severity." *See* 20 C.F.R. §§416.902, 416.906, 416.924a, 416.926.

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering whether a person under the age of 18 continues to be disabled for purposes of receipt of SSI, the Social Security Agency is guided by a three-step sequential benefits analysis. At Step 1, the ALJ must determine whether medical improvement has occurred in the impairments present at the CPD. 20 C.F.R. §416.994a(b)(1). Medical improvement is defined as any decrease in the medical severity of impairment(s) present at the CPD. 20 C.F.R. § 416.994a(c). At Step 1, Plaintiff does not dispute that TD has experienced some level of medical improvement in his conditions.

At Step 2, if the CPD was based on functional equivalence to the Listings as here, the ALJ considers whether the same impairment(s) considered at the CPD continue to functionally equal any Listing. 20 C.F.R. § 416.994a(b)(2). If not, the ALJ proceeds to Step 3. At Step 3, the ALJ must determine whether the child is currently disabled, considering all the impairments that the child currently has, including any impairments not present or not considered at the CPD. *See* 20 C.F.R. § 416.994a(b)(3).

In the case presented, the ALJ determined at Step 2 that TD had experienced medical improvement from the previously determined "extreme" level of impairment in the domain of "interacting and relating with others." Without the continuation of any "extreme" impairment that would result in an automatic finding of functional equivalence to Listing-level impairment, the ALJ proceeded to Step 3. At Step 3, the ALJ assessed TD's functioning in all six domains. Plaintiff argues that this Court should reverse based upon a lack of substantial evidence to support the ALJ's findings at Steps 2 and 3. I disagree.

**B. Plaintiff's Claims**

**1. General Arguments Concerning Functional Equivalence Findings**

Plaintiff maintains that the ALJ erred in determining that TD's impairments no longer functionally equal a Listed impairment.[1] To determine functional equivalence, the Commissioner is required to assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). As stated, a child will be found to

---

[1] Plaintiff does not identify any specific Listing as to which she believes TD's level of impairment was functionally equivalent. The ALJ identified and discussed three possible Listings, including Listing 112.02 (neurocognitive disorders), 112.06 (anxiety disorders), and 112.11 (neurodevelopmental disorders). (Tr. 26).

5

have functional equivalence to a Listing if he has an "extreme" impairment in one of the six functional areas, or if he has "marked" impairment in at least two of the areas. Previously, the CPD found disability based upon TD's "extreme" impairment in the domain of interacting and relating with others based on his severe speech and language delays. However, the 2012 CPD contained no assessment of TD's degree of limitation in any of the other five domains.

TD does not appear to dispute the ALJ's finding that his impairment in "interacting and relating with others" has medically improved from the "extreme" level, and is no more severe than the "marked" level. The record unequivocally supports that finding. The 2012 CPD found extreme limitation in speech based in part on records that reflected his speech was only 25-40% intelligible in an unknown context, and requests to repeat would barely increase intelligibility. In addition, as of the CPD, TD required "multiple visual and tactile clues to produce difficult sounds," and was rarely able to do so. (Tr. 76). However, even Plaintiff testified that TD's speech and language abilities had substantially improved with regular therapy. In contrast to the CPD, later testing found intelligibility to have increased to 70% in an unknown context and improved to 90% after a request for repetition. (*Id.*; *see also* Tr. 1115) On August 13, 2014, TD underwent a consulting examination with Norman Berg, Ph.D., who found no difficulty with receptive language. Dr. Berg also found 85% of TD's speech to be fairly easily understood in unknown context, although Dr. Berg observed no additional improvement beyond the 85% range after a request for repetition. (*Id.*)

Because TD has only "marked" limitation in the domain of interacting and relating to others, Plaintiff must prove that TD's impairments resulted in "marked" limitations in at least one additional domain in order to prove functional equivalence to any Listing. 20

6

C.F.R. §416.926a(d). However, on the record presented, the ALJ found "no limitation" at all in the two domains of "caring for yourself" and in "moving about and manipulating objects." (Tr. 22-23). Plaintiff does not dispute those findings, which again, are substantially supported by the record.

Aside from the TD's "marked" impairment in interacting and relating to others, then, the only other possible domains that could support a functional equivalence finding are the domains of "acquiring and using information," "health and physical well-being," and "attending and completing tasks." The ALJ found "less than marked" limitation in all three of those domains.

In her Statement of Errors, Plaintiff does not point to any records other than two consulting opinions to support her contention that remand is required. Moreover, she appears to argue error only in the ALJ's finding of a "less than marked" in the domain of "acquiring and using information," (Doc. 9 at 3), and does not argue error in the other two domains in which the ALJ found "less than marked" limitation.

Even if Plaintiff had intended to challenge the ALJ's findings of "less than marked" limitations in the domains of "health and physical well-being" and "attending and completing tasks," the undersigned would have rejected that challenge because those findings are substantially supported by the record. With respect to physical health, the ALJ noted TD's diagnoses of enuresis and allergy-induced asthma, but that neither Plaintiff nor TD alleged any significant limitations relating to those conditions. (Tr. 24). With respect to "attending and completing tasks," the ALJ relied upon a clinical assessment by an examining consultant, Dr. Berg, that demonstrated that TD was able to concentrate without signs of hyperactivity, despite "occasionally" requiring redirection due to periods of inattention and a borderline score on the working memory subsection

7

of the WISC-IV exam. (Tr. 20). In a second consulting examination conducted by Dr. Lester, no observed focus or attentional deficits were noted. Although both Drs. Berg and Lester diagnosed TD with ADHD based on their overall findings and reports from TD's mother, their diagnoses do not support a "marked" level of limitation and the ALJ cited multiple additional records that supported his determination of "less than marked" limitation in that domain. (Tr. 21).

For the reasons stated, substantial evidence supports the ALJ's findings of "less than marked" impairments in the domains of health and physical well-being, and in attending and completing tasks. Substantial evidence further exists to support the ALJ's findings of no impairment in two other functional domains, as well as his finding of "marked" but not "extreme" impairment in interacting and relating with others. Thus, the only path remaining to Plaintiff to prove functional equivalence to a Listing is to show that the ALJ erred in finding "less than marked" impairment in the sole remaining domain of "acquiring and using information."

### 2. The ALJ's Evaluation of the Medical Opinion Evidence

Rather than pointing to any specific evidence that would support a finding of marked impairment, Plaintiff's primary argument is that the ALJ committed reversible error in the manner in which he evaluated the medical opinion evidence. Plaintiff implies that, had the ALJ given the appropriate weight to the opinions of two psychologists, the ALJ would have found marked impairment in a second domain.

The first portion of Plaintiff's argument misapprehends the nature of the referenced psychological opinions. Although Plaintiff asserts error in the ALJ's failure to give

8

"controlling" weight to their opinions under the "treating physician" rule,[2] neither Norman Berg, Ph.D., nor George Lester, Psy.D., were treating physicians to whom controlling weight was due. Rather, both psychologists were one-time examining consultants. (Tr. 1101-09, 1140-44).

Plaintiff next argues that the ALJ committed legal error by failing to give greater weight to the two examining psychologists than he did to the two opinions offered by non-examining psychologists. Despite appropriately assessing each medical opinion individually, the ALJ explained that he gave the opinions of both examining and non-examining psychologists only "some" weight.[3] It is true that the relevant regulatory scheme *generally* affords greater weight to examining psychologists than to non-examining reviewing psychologists. However, there are many legitimate reasons for an ALJ to deviate from that regulatory presumption, and no consulting opinion is entitled to controlling weight. Here, the ALJ's analysis of all of the referenced opinion evidence is substantially supported.

First, the ALJ's decision to give only "some weight" to the assessments offered by the non-examining consultants is substantially supported. Understandably, Plaintiff does not quarrel with that assessment, since those reviewers opined that TD has no marked limitations in *any* category.[4] By contrast, the ALJ determined that TD continues to have

---

[2]Effective March 27, 2017, a new rule set forth in 20 C.F.R. § 404.1520c entirely replaces the treating physician rule. However, the Commissioner has made clear that the elimination of the treating physician rule applies only to "claims filed on or after March 27, 2017." *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5845. Based on the date that Plaintiff filed her claim, the "treating physician rule" and related case law continue to apply. *Accord, Glanz v. Com'r of Soc. Sec.*, 2018 WL 3722318 at n. 5 (N.D. Ohio July 17, 2018).

[3] The ALJ also gave only "some weight" to the opinions of speech-language pathologists and TD's first grade teacher. (Tr. 25-26). Plaintiff does not appear to challenge the ALJ's assessments of those opinions. In any event, the ALJ's stated reasons for the weight given to the referenced opinions reflects no error.

[4] As the Commissioner points out, the non-examining reviewing consultants explicitly considered Dr. Berg's report in their evaluation of the record at that time. (Tr. 1115).

"marked" limitations in the domain of interacting and relating with others, despite the fact that his speech and language skills have improved "immensely." (Tr. 24-25).

Turning to the assessment of the opinions of Drs. Berg and Lester, the ALJ explained that he also gave their opinions only "some weight," for the following reasons:

> Following their consultative evaluations, both Drs. Berg and Lester provided short narrative statements that suggest the claimant has some, non-specific level of limitation in the four non-physical functional domains…. These reports merit some weight because Drs. Berg and Lester were able to conduct a thorough, in-person examination of the claimant and they supported their opinion statements with discussion of the findings and reports from their exams. However, the opinion statements offered by Drs. Berg and Lester offer only limited utility because they did not offer an opinion on the extent/severity of the claimant's limitations.

(Tr. 25).

Close review of the opinions of both Drs. Berg and Lester not only confirms the ALJ's analysis is substantially supported, but underscores the lack of any opinion from either psychologist – or any other evidence in the record - to support Plaintiff's assertion of "marked" impairment in the domain of acquiring and using information. Likewise, there is no evidence to support marked or extreme impairments in any other domain. Instead, it appears that the ALJ was fairly generous in assessing TD's impairment in the single domain of interacting and relating with others as "marked."[5]

---

[5] "Marked limitation" exists when the child's impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities, regardless of whether the impairment limits only one activity in the domain, or several activities. The interactive and cumulative effects of a child's impairments must be considered; both relevant regulations and several social security rulings also require the Commissioner to consider the "whole child" in making findings regarding functional equivalence. 20 C.F.R. §415.926a(b) and (c); see also generally SSR 09-1p. A "marked" limitation is "more than moderate" but "less than extreme." 20 C.F.R. §416.926a(e)(2). Although test scores alone are not sufficient to show marked impairment, a valid score on a comprehensive standardized test designed to measure ability or functioning in a domain, that is at least two standard deviations (but less than three) below the norm for the test, will support a "marked" limitation, provided the child's day-to-day functioning in domain-related activities is consistent with the score. 20 C.F.R. § 416.926a(e)(2)(iii).

Dr. Berg evaluated TD on August 13, 2014. At that evaluation, Plaintiff reported that TD "likes to learn and doesn't refuse to go to school" despite his difficulties with reading and speech and "some problems focusing and concentrating." (Tr. 1102). Dr. Berg noted, consistent with his mother's reports, that TD was neat, properly dressed, and cooperative. (Tr. 1102-1103). He assessed TD as having "no difficulty with receptive language" and "fairly good expressive language skills," despite "difficulty with articulation with 85% of his speech being fairly easily understood in an unknown context." (Tr.1103). Dr. Berg noted that TD clinically presented as functioning "between the borderline and low average ranges of intelligence," (Tr. 1104, 1106), but that his test scores fell in the upper part of the borderline range, with a significant discrepancy between his performance and verbal scores. (Tr. 1105-1106). In terms of his assessment of the domain of acquiring and using information, Dr. Berg offered the following opinion:

> Claimant tested in the upper part of the borderline range of intelligence average range of intelligence, and clinically he appeared to function between this and the low-average range of intelligence. On testing claimant's verbal score was in the borderline range while his perceptual reasoning score was in the low average range. Claimant does have an IEP to address problems with reading and speech. Mother mentioned claimant obtains fairly good grades but does have much difficulty with reading.

(Tr. 1107).

Dr. Lester evaluated TD more than two years later, on February 16, 2017. At that time, TD appeared to be "clean and neatly dressed," and "came back to the office for interview without any difficulties or obvious apprehensiveness." (Tr. 1142). His mother reported he was "pretty good in math," although TD himself reported he "likes art and finds math difficult." (Tr. 1141-42). Dr. Lester repeatedly described TD's ability to communicate verbally as "easily understood," despite noting some unusual pronunciations of certain words. (Tr. 1142). TD told Dr. Lester that he enjoys playing

11

basketball and football with his friends, and reported grades ranging from A's to D's. (*Id.*) He had no difficulty retaining 5 of 5 objects after 5 minutes, and was able to retain 5 digits forward and 3 digits backwards. (*Id.*) Dr. Lester did not perform new IQ testing, but agreed that the prior test results appeared appropriate. (Tr. 1143). In assessing TD's functional abilities in the domain of acquiring and using information, Dr. Lester offered the following:

> The child obtains a Full Scale IQ Score toward the upper end of the borderline range. He retained 5 of 5 objects after 5 minutes. He receives special services at school to help out with some of his academic work and he seems to have particular difficulties with reading. The mother states that, in order for him to complete chores, he needs a lot of support including breaking down the chores into smaller components, repeating them and demonstrating them if needed.

(Tr. 1143).

In addition to his substantially supported evaluation of the opinion evidence, the ALJ discussed all relevant standards to evaluate "how well a child is able to acquire or learn information, and how well a child uses the information he has learned." (Tr. 18). The domain involves how well children perceive, think about, remember, and use information in all settings, including their daily activities at home, at school, and in the community. (*Id.*, citing 20 C.F.R. §416.926a(g)). The ALJ appropriately reviewed what information a school age child without an impairment should be able to acquire and use, and cited specific records that demonstrated TD's "less than marked" level of impairment. For example, the ALJ discussed school records that showed reading skills in the borderline range, math skills in the low average range, and overall writing skills in the average range, along with records showing TD's receptive language skills and language context scores were within the average range, with significant improvements in his expressive language and overall language scores over time. (Tr. 18-20). TD is enrolled

in general education classes, with IEP services only once per week for his speech-language therapy appointments. (Tr. 19). The ALJ acknowledged that additional IEP services based on late 2016 testing showed that TD qualified to receive additional supplementary services in reading, writing and math, but noted that TD would remain in regular classes with some supplementary aides and accommodations on assignments.[6] (Tr. 19-20).

In sum, the record very strongly supports the ALJ's conclusions that TD has experienced significant medical improvement since the CPD, no longer has any extreme limitation, and has only one marked limitation in the domain of interacting and relating to others. No physician or consulting expert opined to the contrary. In fact, Plaintiff fails to cite to any record that she believes supports a finding of disability but that the ALJ ignored, either among the school records or the medical records.

This Court's review is limited to a determination of whether "substantial" evidence exists in the record as a whole, defined as consisting of "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health and Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994). The ALJ's analysis easily meets that standard. *See also, generally Smith v. Com'r*, Case No. 1:14-cv-746-SJD, 2015 WL 9467684 (Doc. 13, R&R filed 12/2/15, adopted 12/28/15) (finding no error in ALJ's reasoning that child had "less than marked" limitation in acquiring and using information where child's IQ scores fell within borderline to low average range).

---

[6] Virtually every child with an IEP functions below grade level in some subjects, but the fact that a child has an IEP or "some" impairment does not reflect "marked" impairment in any domain. Many children perform poorly in school and/or require significant additional resources for a variety of reasons that do not equate to a disability under the Social Security Act.

### III. Conclusion and Recommendation

For the reasons discussed, substantial evidence exists to support the ALJ's determination that TD was not disabled on or after May 1, 2014. Therefore, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED**, and that this case be **CLOSED.**

                          _/s Stephanie K. Bowman_
                          Stephanie K. Bowman
                          United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

KE'MOGENA YISRAEL,
on behalf of minor child, T.D.,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:18-cv-410

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).